IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JESSICA JIMENEZ, Parent,
on behalf of G.G., Student,

      Plaintiff,

v.                                                                      Case No. 1:25-cv-00965-WJ-JFR

NEW MEXICO SCHOOL FOR THE DEAF,
BOARD OF EDUCATION
OF SANTA FE PUBLIC SCHOOLS, and
NEW MEXICO PUBLIC EDUCATION DEPARTMENT,

      Defendants.

---

NEW MEXICO SCHOOL FOR THE DEAF,

      Respondent-Appellant,

v.                                                                      Case No. 1:25-cv-0966-WJ-GBW

JESSICA JIMENEZ, for G.G., Student,

      Petitioner-Appellee.

**<ins>MEMORANDUM OPINION AND ORDER GRANTING THE NEW MEXICO PUBLIC
EDUCATION DEPARTMENT'S MOTION TO DISMISS [DOC. 18]</ins>**

THIS MATTER comes before the Court on the New Mexico Public Education Department

("the Department")'s Motion to Dismiss the Complaint for failure to state a claim, Fed. R. Civ. P.

12(b)(6), under the Americans with Disability Act (ADA), Rehabilitation Act (RA), and

Individuals with Disabilities Education Act (IDEA). **(Doc. 18, 25-cv-965)** (the Motion). Plaintiff

Jessica Jimenez brings suit on behalf of her 13-year-old[1] son, G.G., who is deaf and has severe

---

[1] The record states that G.G. was 12 years old at the time of the due process hearing in May 2025, so the Court assumes
that he is now 13 years old. **Doc. 11-1, No. 25-cv-966, Due Process Hearing Officer's Decision ("HOD"), at 20**.

autism and is entitled to protections under the IDEA.  In 2023 and 2024, G.G. attended the New

Mexico School for the Deaf ("the School for the Deaf") in Santa Fe.  Over Ms. Jimenez's objection,

in the Fall of 2024, the School for the Deaf developed two Individualized Educational Programs

(IEPs) directing G.G.'s placement at Santa Fe Public Schools.  The School for the Deaf disenrolled

G.G. on November 8, 2024; G.G. was subsequently enrolled in Santa Fe Public Schools.

On March 17, 2025, Ms. Jimenez filed a complaint for a due process hearing, alleging that

G.G.'s rights under the IDEA had been violated by the School for the Deaf and Santa Fe Public

Schools.  *See* 20 U.S.C. § 1415(f).  A Due Process Hearing Officer (DPHO) concluded that the

School for the Deaf and Santa Fe Public Schools denied G.G. a free appropriate public education

(FAPE) when, as of the sixth grade, G.G. was no longer placed in an immersive deaf educational

environment suited to his needs.

In the instant action, Ms. Jimenez seeks limited judicial review of the DPHO's

decision — specifically, its remedy.  *See* 20 U.S.C. § 1415(i).  Ms. Jimenez also seeks declaratory

and injunctive relief against the Department, alleging that it did not fulfill its statutory obligations

as the State Educational Agency (SEA)[2] for the State of New Mexico under the IDEA, 20 U.S.C.

§§ 1400 et seq.[3]  Ms. Jimenez further alleges that the Department discriminated against G.G. under

Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131–12134, and Section

504 of the Rehabilitation Act (RA), 29 U.S.C. § 794.  Ms. Jimenez seeks declaratory and injunctive

---

[2] The IDEA defines "State educational agency" as "the State board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and secondary schools, or, if there is no such officer or agency, an officer or agency designated by the Governor or by State law."  20 U.S.C. § 1401(32).  Under New Mexico law, the Department is the "sole educational agency of the state for the administration or for the supervision of the administration of any state plan established or funds received by the state by virtue of any federal statute relating to aid for education."  N.M.S.A. § 22-9-2 (2025).  The Motion does not dispute that the Department is the SEA for the State of New Mexico.

[3] Ms. Jimenez also alleges violation of the New Mexico Civil Rights Act by the School for the Deaf and Santa Fe Public Schools.  **Compl. ¶¶ 114–119**.  The state law claims against the School for the Deaf and Santa Fe Public Schools are not at issue here.

relief under the ADA and RA and compensatory damages under those statutory provisions for G.G.'s loss of education and learning time since the beginning of the 2024–2025 school year. **Compl. ¶ 120.**

For the reasons below, the Court GRANTS the Department's motion to dismiss the claims under the ADA, RA, and IDEA for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

### FACTUAL BACKGROUND

A more complete summary of the facts found by the DPHO is set forth in the Court's Memorandum Opinion and Order addressing the School for the Deaf's Motion for a Stay of the DPHO's decision. **Doc. 34**. A detailed description of the DPHO's findings regarding the particulars of G.G.'s educational placements, IEPs and the like, however, is largely tangential to the resolution of the instant Motion. The central issue here is, assuming the DPHO's finding that G.G. was denied a FAPE is correct, whether Ms. Jimenez has plausibly alleged a basis for holding the Department, as the SEA, liable under the IDEA, the ADA, and the RA. The Court therefore summarizes below only the facts relevant to the Department's liability, as alleged in the Complaint, **Doc. 1, 25-cv-965**, and in the light most favorable to Ms. Jimenez as the non-moving party.

G.G. attended the School for the Deaf from February 2023 to November 2024. Ms. Jimenez does not contest that during the 2023 to 2024 school year, G.G. was receiving an appropriate education. *See* **HOD at 61; Doc. 1 ¶ 69** (challenging the HOD only as to its remedy). When G.G. entered the sixth grade in the Fall of 2024, however, his teachers did not have a degree in deaf education or training in educating students with autism or appropriate behavioral supports. Accordingly, the DPHO found that beginning in the sixth grade, G.G. was no longer receiving an appropriate education suited to his needs. **HOD at 61**.

The School for the Deaf conducted two individualized education plans (IEPs) in October

3

of 2024, resulting in G.G.'s transfer from the School for the Deaf to Santa Fe Public Schools. In Santa Fe Public Schools, G.G. was placed in a special education classroom with classmates who were significantly younger, hearing and did not use ASL. **Compl. ¶ 51**. Consistent with the DPHO's decision, Ms. Jimenez alleges that Santa Fe Public Schools denied G.G. a FAPE and that neither Santa Fe Public Schools nor the School for the Deaf "can meet [G.G.]'s unique needs as a student who is deaf and has autism." *Id.* ¶ 55.

On March 17, 2025, Ms. Jimenez filed a complaint for a due process proceeding against the School for the Deaf, Santa Fe Public Schools and the Department. The DPHO granted the Department's motion to dismiss itself as a party to that action. *Id.* ¶ 17. The record suggests the dismissal came as a result of the fact that the Department was not directly providing educational services to G.G. *Id.*; **Mot. at 11;** *see* § 1415(b)(6)(A) ("The procedures required by this section shall include . . . . an opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or provision of a free appropriate public education to such child"); *see also Chavez*, 621 F.3d at 1283 (holding that "as the SEA is not involved in the actual provision of M.C.'s IEP, [the Department] was properly exempted from the administrative process"). After a seven-day hearing, in a written decision dated September 4, 2025, the DPHO determined that the School for the Deaf and Santa Fe Public Schools had denied G.G. a FAPE and ordered the School for the Deaf to select and fund a residential, therapeutic educational placement suited to G.G.'s needs as a student who is deaf and has autism. *See* **HOD at 77–78**. Implementation of the DPHO's remedy is stayed pending further proceedings. **Doc. 34**.

Consistent with an informal stipulation and further to this Court's Memorandum Opinion and Order, **Doc. 34**, Santa Fe Public Schools has agreed to continue providing G.G. an appropriate

education in his least restrictive environment (LRE), to the maximum extent possible, consistent with the DPHO's description of that educational environment pending further developments in the litigation. The record suggests G.G. has since completed the seventh grade in Santa Fe Public Schools. *See id.*; **Compl. ¶ 53; Doc. 22 at 2.**

## DISCUSSION

### I.      Rule 12(b)(6) Standard

To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the well-pled facts in the Complaint, and any documents referred to and therefore incorporated therein, must be sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Complaint need not establish a prima facie case; it "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). In evaluating a complaint under Rule 12(b)(6), the Court "must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). The standard of review does not require the Court to accept as true legal conclusions nor does it require it to credit allegations based on pure speculation or conjecture. *See id.*; *Khalik v. United Airlines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### II.     IDEA Claims

Ms. Jimenez alleges that the Department violated its supervisory and enforcement duties under 20 U.S.C. § 1412, in general and as to the School for the Deaf, resulting in a denial of FAPE to G.G. **Compl. ¶¶ 79, 95, 97**. Specifically, Ms. Jimenez alleges the Department neglected to monitor and enforce New Mexico special education regulations governing the School for the Deaf and lacked specialized knowledge of the needs of deaf students and deaf education. **Compl. ¶ 82**

(citing N.M. Admin. Code § 6.31.2.11(K)); ¶ **84.** In addition, she alleges that when the School for the Deaf disenrolled G.G. in the Fall of 2024, the Department knew or should have been aware that the School for the Deaf maintained a practice of excluding individuals who had disabilities in addition to deafness. *Id.* ¶¶ **87, 88.** She also claims that the Department violated the IDEA when it was named as a respondent in the due process proceedings — and thereby put on notice of her concerns regarding G.G.'s education — but elected to seek dismissal rather than support her in seeking a FAPE for G.G. Last, she alleges that the Department has not communicated how it will ensure G.G. is receiving an appropriate education going forward, despite the DPHO's September 4, 2025 order finding an IDEA violation. *Id.* ¶¶ **94, 96**.

States that receive federal funding under the IDEA must ensure that "[a] free appropriate education is available to all children with disabilities residing in the State between the ages of 3 and 21." 20 U.S.C. § 1412(a)(1)(A). "The IDEA is primarily a funding statute and the SEA controls some of the purse strings." *Chavez ex rel. M.C. v. N.M. Pub. Educ. Dep't*, 621 F.3d 1275, 1287 (10th Cir. 2010). Specifically, "the IDEA provides that federal funding be distributed to [SEAs], which in turn, allocate those funds to [LEAs]." *A.H. ex rel. D.H. v. Nampa Sch. District No. 131*, No. 1:25-cv-00489, 2026 WL 265445, at *2 (D. Idaho Jan. 30, 2026) (citing § 1411). State educational agencies, like the Department, are primarily responsible "for implementing the IDEA and policing IDEA compliance." *Ellenberg v. N.M. Mil. Inst.*, 478 F.3d 1262, 1269 (10th Cir. 2007); *see* 20 U.S.C. § 1412. On the other hand, local educational agencies (LEAs) bear "primary responsibility for overseeing the actual provision of special education services." *Ellenberg*, 478 F.3d at 1269.

Although the SEA is not primarily directly responsible for providing education, there are certain statutorily defined situations in which the SEA is nonetheless required, after specific

6

procedures, to provide "direct services" with the funds which would otherwise be provided to the LEA. *See* 20 U.S.C § 1412(b); § 1413(g)(1). The IDEA provides

> A State educational agency shall use the payments that would otherwise have been available to a local educational agency or to a State agency[4] to provide special education and related services directly to children with disabilities residing in the area served by that local educational agency, or for whom that State agency is responsible, if the State educational agency determines that the local educational agency or State agency, as the case may be--
>
> **(A)** has not provided the information needed to establish the eligibility of such local educational agency or State agency under this section;
>
> **(B)** is unable to establish and maintain programs of free appropriate public education that meet the requirements of subsection (a);
>
> **(C)** is unable or unwilling to be consolidated with 1 or more local educational agencies in order to establish and maintain such programs; or
>
> **(D)** has 1 or more children with disabilities who can best be served by a regional or State program or service delivery system designed to meet the needs of such children.

§ 1413(g)(1). Therefore, the SEA's responsibilities are dual. One, the SEA must ensure that covered educational institutions comply with the IDEA. § 1412(a)(11). This responsibility may be understood as the SEA's "enforcement" responsibility. Two, in the circumstances outlined in § 1413(g), the SEA has an obligation to intervene and assume responsibility for providing a FAPE directly to students. Importantly, Ms. Jimenez does not allege that the Department was required to intervene and directly provide a FAPE to G.G. ***See* Compl. ¶¶ 79–97; Doc. 22 at 11–12**. Thus, the Department's arguments that it was not required to do so are misplaced. **Doc. 18 at 8–11.** Rather, Ms. Jimenez's allegations concern flaws in the Department's enforcement mechanism.

---

[4] The IDEA does not define "State agency." The Court therefore refers to New Mexico law for an applicable definition. New Mexico statute lists several institutions that constitute "state agenc[ies]" or "state institution[s]" including New Mexico School for the Deaf. N.M.S.A. § 22-1-2(W).

**Compl. ¶¶ 79, 82; Doc. 22 at 11–12.**  The Court reviews the legal basis for those claims below.

In this Circuit's case law, there is limited treatment of the scope of liability under § 1412 for alleged violations of the State's supervisory and enforcement obligations.  Most of the cases appear instead to address allegations regarding a failure to provide direct services under § 1413.  *See Chavez ex rel. M.C. v. N.M. Pub. Educ. Dep't*, 621 F.3d 1275 (10th Cir. 2010) (discussing a claim that the Department was "directly responsible for the provision of education" to the student pursuant to § 1413(h))[5]; *Chavez v. Bd. of Educ. of Tularosa Mun. Schs.*, 614 F. Supp. 2d 1184 (D.N.M. 2008), *rev'd in part, aff'd in part*, *sub nom. Chavez ex rel. M.C. v. N.M. Pub. Educ. Dep't*, 621 F.3d 1275 (10th Cir. 2010) (evaluating a claim regarding the Department's provision of direct services under § 1413(h)); *Pipkins v. Bd. of Educ. of Reserve Indep. Sch.*, No. 12-CV-00205, 2013 WL 12329120 (D.N.M. Sep. 19, 2013) (addressing the Court's jurisdiction over a claim for relief under § 1413(h)); *Saenz ex rel. V.S. v. Bd. of Educ. of Silver Consol. Schs.*, No. 18-cv-954, 2019 WL 1795539, at *7 (D.N.M. Apr. 24, 2019) (evaluating the plaintiff's claims under § 1413(g)). Indeed, while Ms. Jimenez distinguishes her claim from the Department's cases addressing claims under § 1413, she does not put forth a precedential case supporting an independent cause of action under § 1412.

The Department relies on a decision from a court within this district, *Saenz ex rel. V.S. v. Board of Education of Silver Consolidated Schools*, 2019 WL 1795539, to support its argument that a failure to plead a condition of § 1413(g) is fatal to sustaining an IDEA claim against a SEA.  **Mot. at 8–9.**  The *Saenz* Court interpreted the Tenth Circuit's reasoning in *Chavez* to suggest "that proving a § 1413(g)(1) prerequisite is the sole avenue by which a plaintiff can establish the liability of an SEA under the IDEA."  2019 WL 1795539, at *7.  The district court also held that, "when a

---

[5] *Chavez* refers to the former § 1413(h), the substance of which now appears in § 1413(g).  *See* 20 U.S.C. § 1413(h) (2000) *cf.* § 1412(g) (2026).

plaintiff seeks to hold an SEA liable under the IDEA for a failure to provide a FAPE, he cannot merely point to the general supervisory responsibilities of § 1412, but must satisfy a § 1413(g)(1) prerequisite." *Id.* at *8. Indeed, assuming that premise were true, the Court would agree that the IDEA claims against the Department should be dismissed on that basis, given that Ms. Jimenez does not plead the elements of a § 1413(g) violation. In fact, nowhere in the Complaint does a citation to § 1413 appear.

But the Court does not read *Chavez* to stand for the principle that § 1413(g) is the only IDEA provision under which a SEA may be held liable. *Chavez* addressed a claim that the Department was "responsible for deprivation of FAPE to Student based on 20 U.S.C. § 1413(h)(1) and 34 C.F.R. § 300.360."[6] Complaint, Case No. 05-cv-00380-JB-CG, Doc. 1, at 5 (D.N.M. Apr. 4, 2005); *Chavez*, 614 F. Supp. 2d at 1218. Thus, the *Chavez* plaintiffs sought relief based on alleged deficiencies in the Department's failure to intervene under § 1413, not its failure to ensure the LEA's compliance with the IDEA under § 1412. Accordingly, *Chavez* does not resolve whether an SEA may be held liable under the IDEA based on its general supervisory obligations under § 1412, because that issue was not before the court.

The IDEA places ultimate responsibility for IDEA compliance on the SEA through § 1412(a)(11). Courts therefore recognize that a SEA may be, in some circumstances, held responsible for IDEA violations notwithstanding the primary responsibility of the LEA. *See Chavez*, 621 F.3d at 1289 ("[I]t seems well-established that . . . the SEA, is indeed potentially financially responsible for an LEA's failure to comply with its responsibilities."); *Pachl v. Seagren*, 453 F.3d 1064, 1070 (8th Cir. 2006) ("State educational agencies may be responsible for violations of the IDEA when the state agency in some way fails to comply with its duty to assure that the

---

[6] At the time, 34 C.F.R. § 300.360 (2000) implemented § 20 U.S.C. § 1413(h)(1) (2000). The regulatory scheme has since been amended and reorganized and the Court has not identified a direct counterpart to the former provision.

IDEA's substantive requirements are implemented.") (cleaned up); *Jackson v. Pine Bluff Sch. Dist.*, No. 16-cv-00301, 2017 WL 2296896, at *5 (E.D. Ark. May 12, 2017) (recommended partial disposition) (same); *Gadsby ex rel. Gadsby v. Grasmick*, 109 F.3d 940, 955–56 (4th Cir. 1997) ("[N]othing in either the language or the structure of the IDEA . . . limits the district court's authority to award reimbursement costs against the SEA, the LEA, or both in any particular case."); *St. Tammany Parish Sch. Bd. v. St. of La.*, 142 F.3d 776, 783–84 (5th Cir. 1998) (same).

The Court therefore assumes, without deciding, that the SEA's general supervisory responsibilities under § 1412, may, in certain circumstances, provide a cause of action against a SEA. Here, Plaintiff's allegations fail for the narrower reason that they do not plausibly connect the Department's alleged failures in supervision or enforcement to the denial of G.G.'s FAPE.

The authorities addressing the SEA's supervisory or enforcement liability suggest that some nexus is required; the SEA's alleged acts or omissions must bear a meaningful relationship to the denial of a FAPE. For example, in *M.C. v. Los Angeles Unified School District*, 559 F. Supp. 3d 1112, 1121 (C.D. Cal. 2021), the district court found that the complaint plausibly alleged a violation of the SEA's supervisory obligations under the IDEA where the complaint alleged that the agency's promulgation of a regulation allowed the school district to maintain policies that denied the plaintiff a FAPE in the least restrictive environment and those alleged IDEA violations "*caused* [the] [p]laintiff to suffer substantial educational and developmental losses." (emphasis added). By comparison, the Eighth Circuit in *Pachl v. Seagren* found that the plaintiffs' allegations regarding the SEA's enforcement duty failed to state a claim under the IDEA where the complaint "d[id] not allege any specific facts or circumstances attributable to the Department that could form the basis for liability under the IDEA." 453 F.3d at 1070. Likewise, another federal district court found that the plaintiffs had not shown the relevance of certain discovery to their claims against

10

the State Department of Education and Board of Education where the plaintiffs did not "articulate what the [discovery] w[ould] show as to *Defendants'* failure to comply with the IDEA, as opposed to any failures of the local school districts." *Disability Rts. N.J. v. N.J. Dep't of Educ.*, No. 07–2978, 2011 WL 4478788, at *9 (D.N.J. 2011) (emphasis in original) ("Plaintiffs . . . do not provide the Court with any explanation as to how a failure by a local school district would support the allegation that Defendants have failed to comply with the IDEA.").

The Court therefore assumes that § 1412(a)(11) may, without an accompanying § 1413(g) violation, in appropriate circumstances, support relief against a SEA. But, as explained below, Plaintiff has not plausibly alleged those circumstances here. First, the Complaint alleges generalized failures of supervision, monitoring, expertise, and enforcement. **Compl. ¶¶ 82, 84**. The Complaint does not, however, allege how these general oversight failures with respect to the School for the Deaf or the Santa Fe Public Schools contributed to the denial of a FAPE in this case. Rather, the Complaint instead illustrates a nexus between the School for the Deaf's development of G.G.'s IEP and the deprivation of a FAPE. *See id.* **¶¶ 88, 90.**

Second, the Complaint alleges that the Department knew or should have known that the School for the Deaf maintained a practice of excluding students with disabilities in addition to deafness. *Id.* **¶ 87**. But the Complaint does not allege facts showing how that purported knowledge caused the specific IDEA violations found by the DPHO here. Nor does it allege that the Department directed, approved, or otherwise participated in the challenged decisions concerning G.G., which are ultimately attributed to the School for the Deaf. *See, e.g., id.* **¶ 86**. The IDEA does not support a claim for vicarious liability by a SEA based solely on deficiencies of the LEA or State agency.

Third, Ms. Jimenez alleges that the Department was placed on notice of her concerns when it was named as a respondent in the due process proceeding. *Id.* **¶¶ 94, 96**. But notice acquired

11

through litigation does not itself establish liability under the IDEA.  The Complaint identifies no provision of the IDEA requiring the Department to adopt Plaintiff's position in the administrative proceedings or forego its contention that it was not a proper party.  Nor does Ms. Jimenez allege how the Department's decision to seek dismissal from those proceedings itself denied G.G. a FAPE.  Indeed, the Complaint contains no allegations demonstrating that the Department's supervisory or enforcement authority was invoked once those proceedings had commenced.

Finally, the Complaint does not allege that Ms. Jimenez sought the Department's intervention or assistance before initiating due process proceedings, initiated a state complaint, *see* N.M. Admin. Code § 6.31.2.13(H), or otherwise invoked the Department's supervisory authority during the period in which the alleged IDEA violations occurred.  The Complaint instead relies primarily on the Department's general supervisory obligations and on notice purportedly acquired through the administrative litigation itself.  These allegations do not plausibly establish that the Department failed to act despite a specific opportunity to exercise its supervisory authority with respect to G.G. *See Chavez*, 621 F.3d at 1289 (an informal letter and a brief phone call constituted insufficient notice of the LEA's non-compliance such that the Department should have assumed responsibility for the student's education); *Saenz*, 2019 WL 1795539, at *8 (concluding that an IDEA due process complaint is "wholly inadequate to satisfy the knowledge requirement under *Chavez*").

For these reasons, the Complaint, as pled, fails to state a plausible claim for relief against the Department under the IDEA.  Accordingly, the claim is dismissed.  Such dismissal is without prejudice because the Court cannot conclude on the present record that amendment would necessarily be futile.

## III.    ADA and Rehabilitation Act Claims

Ms. Jimenez alleges all three defendants violated Title II of the ADA and Section 504 of

12

the RA by discriminating against G.G. on the basis of disability.  **Compl. ¶ 111.**  Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability" shall, solely by reason of that disability, be excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).  Title II of the ADA similarly prohibits a public entity from excluding a qualified individual with a disability from participation in, denying such individual the benefits of, or otherwise discriminating against that individual by reason of disability.  42 U.S.C. § 12132. "When evaluating a discrimination claim under both § 504 and Title II of the ADA, 'because these provisions involve the same substantive standards, courts analyze them together.'"  *Dorsey v. Pueblo Sch. Dist. 60*, 140 F. Supp. 3d 1102, 1116 (D. Colo. 2015) (quoting *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1245 (10th Cir. 2009)).

To state a claim under either statute, a claimant must plausibly allege that the student is a qualified individual with a disability and that the student was excluded from participation in, denied the benefits of, or otherwise subjected to discrimination under a covered program or activity because of the student's disability.  *See Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).  Where a plaintiff seeks compensatory damages under Title II or § 504, the Complaint must plausibly allege that discrimination was intentional.  Intentional discrimination may be established through deliberate indifference. *See A.J.T. ex rel. A.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 344–45 (2025).  Deliberate indifference, in this context, means a failure to act upon knowledge that a violation of federally protected rights is substantially likely.  *Id.*; *see Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999).

Although a denial of a FAPE may, in some circumstances, support a claim under Title II or

13

§ 504, a plaintiff must allege more than a violation of the IDEA's substantive or procedural requirements. *See Miller*, 565 F.3d at 1246 ("The IDEA and § 504 [and Title II] differ, and a denial under the IDEA does not ineluctably establish a violation of § 504 [and Title II]."). The ADA and Rehabilitation Act do not provide a remedy for every alleged denial of FAPE. *Id.* Rather, a plaintiff must plausibly allege that the defendant discriminated against the student because of the student's disability, and, where compensatory damages are sought, acted with the requisite level of intent.

With respect to the Department, Ms. Jimenez alleges that the Department

> intentionally discriminated against G.G. on the basis of disability by refusing to require [the School for the Deaf] to implement IDEA in accordance with the law, particularly as to mandates requiring provision of LRE for students who are deaf and the need to meet all unique needs arising from student's disabilities.

**Compl. ¶ 110**. Ms. Jimenez further alleges that each defendant, including the Department, has "intentionally discriminated against G.G. on the basis of disability by their silence and failure to provide notice and information to Parent about what Student's educational setting and education will be as of October 20 when the [DPHO's] order requires placement in an educational therapeutic setting." *Id.* ¶ **111**. In essence, Ms. Jimenez alleges that the Department discriminated against G.G. by (i) failing to enforce the IDEA as to the School for the Deaf and (ii) remaining silent and otherwise failing to act after the DPHO's Order.

The Complaint does not support a plausible inference that the Department discriminated against G.G. Instead, the Complaint relies on an alleged failure to compel the School for the Deaf to comply with the IDEA. But allegations that the Department inadequately monitored or enforced IDEA compliance do not alone plausibly establish discrimination. The Tenth Circuit has made clear that, although compliance with the IDEA is sufficient to defeat an educational discrimination claim, not every IDEA violation gives rise to such a claim. *Miller*, 565 F.3d at 1246; *see also KG*

*ex rel. Christine C. v. Santa Fe Pub. Sch. Dist.*, No. 12-cv-1209, 2013 WL 12330111, at *7 (D.N.M. May 17, 2013) ("[T]he Tenth Circuit holds that denial of a free, appropriate public education alone is not sufficient to support a Rehabilitation Act or ADA claim").  Assuming the School for the Deaf did in fact violate the IDEA by denying G.G. an appropriate education in the least restrictive environment, the Complaint alleges no facts plausibly connecting those IDEA violations to discriminatory action or inaction by the Department.

Moreover, insofar as Ms. Jimenez seeks compensatory damages under Title II or § 504, the Complaint does not plausibly allege deliberate indifference.  The allegations concerning the Department's knowledge arise principally from contentions advanced during the administrative proceedings and from allegations of broader systemic deficiencies.  **Compl. ¶¶ 87, 111**.  But allegations asserted by a parent in a due process complaint do not alone establish that the Department had actual knowledge that G.G. was being subjected to disability discrimination.  At most, those allegations placed the Department on notice of a dispute concerning the School for the Deaf's compliance with the IDEA.  The Complaint does not plausibly allege that the Department was presented with facts demonstrating a substantial likelihood that G.G.'s federally protected rights were being violated and nevertheless made a deliberate choice not to act.

For these reasons, the Complaint fails to sufficiently allege that the Department discriminated against G.G. under the ADA or RA.  The claims arising under those statutes are therefore dismissed with prejudice because amendment would be futile.

## ORDER

IT IS ORDERED that the claims against the Department under the IDEA are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that the claims under Title II of the ADA and Section 504 of

the Rehabilitation Act are DISMISSED WITH PREJUDICE.

       SO ORDERED.


_/s/_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE

16