**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**JESSICA JIMENEZ, Parent, on behalf of G.G., Student,**

**Plaintiff,**

**vs.** **Civ. No. 25-965 MLG/JFR**

**NEW MEXICO SCHOOL FOR THE DEAF, BOARD OF EDUCATION OF SANTA FE PUBLIC SCHOOL, and NEW MEXICO PUBLIC EDUCATION DEPARTMENT,**

**Defendants.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on Defendant New Mexico Public Education Department's ("NMPED") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss"), filed August 17, 2026. Doc. 45. On August 31, 2026, Plaintiff filed a Response. Doc. 47. On September 28, 2026, Defendant NMPED filed a Reply. Doc. 51. Having reviewed the parties' submissions and the applicable law, and being otherwise fully advised, the undersigned recommends, for the reasons set forth herein, that the Motion to Dismiss be **GRANTED**.

[1] On July 9, 2026, this case was reassigned to United States District Judge Matthew L. Garcia. Doc. 37. In accordance with 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990), District Judge Garcia referred this matter to the undersigned on August 3, 2026, to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition. Doc. 41.

## I. PROCEDURAL BACKGROUND

Plaintiff filed her initial Complaint on October 3, 2025.[2] Doc. 1. Plaintiff brings suit on behalf of her 13-year-old son, G.G., who is deaf and has severe autism and is entitled to protections under the IDEA. In 2023 and 2024, G.G. attended the New Mexico School for the Deaf ("NMSD") in Santa Fe. Over Plaintiff's objection, in the fall of 2024, the NMSD developed two Individualized Educational Programs ("IEPs") directing G.G.'s placement at Santa Fe Public Schools ("SFPS"). The NMSD disenrolled G.G. on November 8, 2024, and G.G. was subsequently enrolled in SFPS.

On March 17, 2025, Plaintiff filed a Request for IDEA administrative due process hearing with NMPED against NMSD, SFPS, and NMPED.[3] On September 4, 2025, a Due Process Hearing Officer ("DPHO") concluded that both NMSD and SFPS had denied G.G. a free appropriate public education (FAPE) when, as of the sixth grade, G.G. was no longer placed in an immersive deaf educational environment suited to his needs and that neither NMSD or SFPS can meet G.G.'s unique needs as a student who is deaf and has autism. *See* USDC NM Civ. No. 25-966, Doc. 11-1. As a remedy, the DPHO ordered NMSD to fund G.G.'s placement at a residential therapeutic school and directed NMSD to locate an appropriate facility accredited by

---

[2] On October 5, 2025, the New Mexico School of the Deaf Board of Regents, filed a Complaint for Judicial Review Pursuant to Section 20 USC § 1415 seeking judicial review of the decision rendered by the DPHO. *See* USDC NM Civ. No. 25-966, Doc. 1. On February 17, 2026, District Judge William Johnson *sua sponte* entered an Order Consolidating Cases finding that "[b]oth actions arise from the same administrative due process proceeding under the Individuals with Disabilities Education Act (IDEA), and involve substantially overlapping parties, claims, and legal issues." Doc. 17 at 2. District Judge Johnson ordered that Case Nos. 1:25-cv-965-WJ/JFR and 1:25-cv-966-WJ/GBW be consolidated and that Case No. 25-cv-965 would serve as the lead case. *Id.* at 3. District Judge Johnson further ordered that "the pending Motion to Stay [Doc. 4, No. 25-cv-966] shall be resolved in the consolidated action." *Id.*

[3] The DPHO granted NMPED's motion to dismiss itself as a party to the action explaining that NMPED was not directly providing educational services to G.G. Doc. 35 at 4.

a state or regional authority in the United States, while taking into account the family's residence in Santa Fe, New Mexico.[4] Doc. 34 at 10.

Plaintiff's Complaint raised three claims under the IDEA: (1) limited judicial review of the DPHO's decision – specifically its remedy, as to NMSD and SFPS; (2) an award of reasonable fees and costs as prevailing party in the IDEA claims against NMSD and SFPS; and (3) declaratory and injunctive relief against the NMPED, as the State Educational Agency ("SEA")[5] for the State of New Mexico, for its alleged violations of failing to enforce the IDEA and failing to ensure availability of FAPE in New Mexico. Doc. 1 at 13-19. Plaintiff's Complaint also raised a claim for disability discrimination pursuant to Section 504 of the Rehabilitation Act ("RA") and Title II of the Americans With Disabilities Act ("ADA") against all three named Defendants. *Id.* at 19-21. Last, Plaintiff's Complaint raised a claim under the New Mexico Civil Rights Act against NMSD and SFPS for violation of G.G.'s rights to equal protection. *Id.* at 29-30.

On November 17, 2025, NMPED filed a Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 18. On June 23, 2026, District Judge William Johnson entered a Memorandum Opinion and Order Granting the New Mexico Public Education Department's Motion to Dismiss. Doc. 35. District Judge Johnson held that Plaintiff's

---

[4] On October 6, 2025, the NMSD filed a Motion to Stay the Due Process Hearing Officer's decision pending a merits review and final judgment. *See* USDC NM Civ. No. 25-966, Doc. 4. On April 10, 2026, District Judge Johnson entered a Memorandum Opinion and Order Granting NMSD's Motion for Stay. Doc. 34. On August 13, 2026, District Judge Matthew L. Garcia entered an Amended Order Regarding Defendant New Mexico School for the Deaf's Motion to Stay holding that "[t]he Memorandum Opinion and Order entered on April 10, 2026, shall remain the Court's ruling." Doc. 43.

[5] The IDEA defines "State educational agency" as "the State board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and second schools, or, if there is no such officer or agency, an officer or agency designated by the Governor or by State Law." 20 U.S.C. § 1401(32). Under New Mexico law, the Department is the "sole educational agency of the state for the administration or for the supervision of the administration of any state plan established or funds received by the state by virtue of any federal statute relating to the aid for education." N.M.S.A. § 22-9-2 (2025). The Motion does not dispute that NMPED is the SEA for the State of New Mexico.

Complaint, as pled, failed to state a plausible claim for relief against the NMPED pursuant to IDEA and dismissed that claim *without prejudice* "because the Court cannot conclude on the present record that amendment would necessarily be futile." *Id.* at 12. District Judge Johnson also held that Plaintiff's Complaint failed to sufficiently allege that NMPED discriminated against G.G. under Title II of the ADA or Section 504 of the RA. *Id.* at 15. District Judge Johnson concluded that "[t]he claims arising under those statutes are therefore dismissed *with prejudice* because amendment would be futile." *Id.*

On August 3, 2026, with leave of the Court, Plaintiff filed an Amended Complaint against all Defendants. Doc. 42. Plaintiff's Amended Complaint similarly raises three claims under the IDEA: (1) limited judicial review of the DPHO's decision – specifically its remedy, as to NMSD and SFPS; (2) an award of reasonable fees and costs as prevailing party in the IDEA claims against NMSD and SFPS; and (3) declaratory and injunctive relief against NMPED, as the SEA for the State of New Mexico, for its alleged violations of failing to enforce the IDEA and failing to ensure availability of FAPE in New Mexico. Doc. 42 at 13-26. Plaintiff's Amended Complaint also raises a claim for disability discrimination pursuant to Section 504 of the RA and Title II of the ADA against all three named Defendants.[6] *Id.* at 26-29. Last, Plaintiff's Amended Complaint raises a claim under the New Mexico Civil Rights Act against NMSD and SFPS for violation of G.G.'s rights to equal protection. *Id.* at 29-30.

On August 17, 2026, NMPED filed its Motion to Dismiss Plaintiff's First Amended Complaint. Doc. 45.

---

[6] In District Judge Johnson's Memorandum Opinion and Order Granting the New Mexico Public Education Department's Motion to Dismiss, Judge Johnson dismissed Plaintiff's ADA and RA claims against NMPED *with prejudice*. Doc. 35 at 15.

## II. LEGAL STANDARDS

### A. Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides that a party may assert by motion the defense of failure to state a claim upon which relief can be granted. In deciding a motion to dismiss premised on Rule 12(b)(6), the Court accepts the factual allegations in the complaint as true and views them in the light most favorable to the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). While the facts in the complaint need not be detailed, they must be sufficient to allow the Court to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration, internal quotation marks, and citation omitted). Indeed, "[c]onclusory allegations are not entitled to the assumption of truth." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis

omitted). A court will not construe a plaintiff's pleadings "so liberally that it becomes his advocate." *Bragg v. Chavez*, 2007 WL 5232464, at *25 (D.N.M. Aug. 2, 2007).

In deciding a motion to dismiss challenging the legal sufficiency of a complaint, the Court generally must exclude extraneous material or convert the motion to one for summary judgment. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017). "A district court may, however, consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (internal quotation marks and citation omitted). Moreover, the Court may take judicial notice of its own files and records in deciding this type of motion. *Tellalabs, Inc. v. Makor Issues & Rts.*, 551 U.S. 308, 322 (2007); *see Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006). Judicial notice of court filings is particularly helpful in situations where a motion to dismiss invokes preclusion doctrines. *See, e.g.*, *Nichols v. Danley*, 266 F. Supp. 2d 1310, 1312 (D.N.M. 2003).

## III. FACTUAL BACKGROUND

The Court summarizes the relevant factual background as alleged in the Amended Complaint in the light most favorable to Plaintiff as the non-moving party.

### A. General Factual Background

Plaintiff's child, G.G., was born in Carlsbad, New Mexico, in 2012 in a hearing family and community. Doc. 42 at 5-6, ¶¶ 26, 28. G.G. was 1 to 2 years old when it was determined that he was deaf and autistic. *Id.* at ¶ 27. G.G.'s education requires specialized instruction and support based on both deafness and autism. *Id.* at 9, ¶ 44. G.G. received early intervention services under the IDEA from Carlsbad Municipal Schools, including preschool services. *Id.* at 6, ¶ 29. Carlsbad Municipal Schools did not have any deaf education teachers, but received

some consultation and guidance from NMSD Outreach Services. *Id.* Plaintiff moved to Santa Fe when G.G. was in preschool so G.G. could receive education at NMSD and learn American Sign Language ("ASL"). *Id.* at 6, ¶ 30. After less than one semester the family had to move back to Carlsbad due to Plaintiff's need for surgery and recovery. *Id.* G.G. was a student in Carlsbad Municipal Schools through the middle of his fifth grade year when the Carlsbad IEP team placed him at NMSD in January 2023. *Id.* at ¶ 31. Plaintiff moved again from Carlsbad to Santa Fe in February 2023 so that G.G. could attend NMSD. *Id.* at ¶ 33. As a student at NMSD, G.G. had access to a full day learning environment with deaf peers and adults and direct instructions delivered through ASL. *Id.* at 8, ¶ 40. G.G.'s trial period placement at NMSD was completed in April 2023 and Plaintiff was informed that G.G. would become a permanent student at NMSD. *Id.* at 9, ¶ 42. G.G. repeated fifth grade at NMSD during the 2023-24 school year and graduated with his class to sixth grade in May 2024. *Id.* at ¶ 43.

When G.G. started sixth grade at NMSD, his teacher was new and did not have a deaf education degree, and NMSD staffing changes left G.G. without teachers trained in strategies for students with autism. *Id.* at ¶ 47. NMSD staff struggled to work with G.G. during the school days in August and September 2024. *Id.* at 9-10, ¶ 48. NMSD conducted two IEPs in October 2024 resulting in G.G. being moved to SFPS. *Id.* at 10, ¶ 49.

G.G. was placed in a special education class at Gonzales Elementary staffed by aides and intermittent substitutes who were not fluent in ASL. *Id.* at ¶ 50. G.G. was the only deaf child in the school. *Id.* In January 2025, SFPS administrators moved G.G. to Salazar Elementary. *Id.* at ¶ 51. G.G. was placed in a special education classroom with younger nondeaf students and his teacher had no experience working with students who were deaf and did not know ASL. *Id.* G.G. became resistant to attending school and frequently lashed out at Plaintiff. *Id.* at ¶ 52.

Plaintiff was advised in March 2025 that G.G.'s school day would be formally shortened and he would need to leave earlier in the afternoon than other students. *Id.* Plaintiff was frequently called back to the school to pick up G.G. even early in the morning. *Id.*

As of the date of filing, G.G. remains enrolled at SFPS and has not been offered any notice of services to be provided by NMSD. Doc. 42 at 13, ¶ 67. Since the DPHO order was issued on September 4, 2025, counsel for Plaintiff has written twice to counsel for NMSD, SFPS, and NMPED inquiring about next steps for G.G.'s education and has been provided no response by counsel for NMSD and SFPS. *Id.* at ¶ 68.

**B. <u>IDEA Claims</u>**

Plaintiff alleges that as the SEA, NMPED accepts federal IDEA monies in exchange for its obligations to implement IDEA for all eligible students with disabilities in New Mexico. Doc. 42, at 17, ¶ 84 (citing 20 U.S.C. §1412). Plaintiff alleges that SEA's IDEA statutory responsibility of "general supervision" includes ensuring that the requirements of IDEA are met and that all educational programs for children with disabilities "meet the educational standards of the [SEA]." *Id.* at ¶ 85 (citing 20 U.S.C. §1412(a)(11)(A)(i), (ii)). Plaintiff alleges that her IDEA claims against NMPED as the SEA are based on (a) NMPED's failure to enforce IDEA for G.G. as a student who is deaf and autistic, and (b) NMPED's failure to enforce IDEA's implementation at NMSD, the state's special school for students who are deaf. Doc. 42 at 16, ¶ 79. Plaintiff does not allege that NMPED was required to intervene and directly provide a FAPE to G.G. pursuant to § 1413(g)(1).

In support of her IDEA claims against NMPED, Plaintiff cites the *Deaf and Hard of Hearing Children's Education Bill of Rights* enacted in 2004, N.M.S.A. 1978, § 28-11C-1, *et seq*., which directed the public education department to "develop a model 'communication

consideration for students who are deaf or hard-of-hearing,' to become part of the [IEP] process." *Id.* at 21, ¶ 96 (citing NMSA 28-11C-1, *et seq*.). Plaintiff also cites a 2004 audit report of IEPs for deaf and hard of hearing students in New Mexico that contained an introductory section setting out statutory authorization for public education department monitoring and that also explained the purpose of the 2004 *Deaf and Hard of Hearing Children's Education Bill of Rights*, *i.e.,* "to encourage the development of a communication-driven and language-driven educational delivery system in New Mexico for children who are deaf or hard-of-hearing." *Id.*

Plaintiff states that in 2009, NMPED released guidance requiring use of "Deaf and Hard of Hearing Addendum" for IEP teams in New Mexico that instructed IEP teams on the requirement pursuant to IDEA to consider special factors for children who are deaf or hard of hearing, including the child's language and communication needs. *Id.* at 20-21, ¶ 96.

Plaintiff next cites a 2016 New Mexico Task Force Report on Education for Deaf and Hard of Hearing Children and Youth, on which NMPED's Director of Special Education participated, that recognized the difficulty of providing appropriate education for students in New Mexico who are deaf because (1) they attend a local school district where there is a low incidence of deaf or hard of hearing students; and (2) the "least restrictive environment" mandate continues to be misunderstood as applied because it fails to address the key language, communication, and social needs of these students. *Id.* at 21-23, ¶¶ 96-98.

Plaintiff explains that more recently, in 2020, New Mexico adopted § 6.31.2.11(K) (NMAC), which "clarified NMPED's regulatory authority over NMSD." *Id.* at 19, ¶ 93. Plaintiff explains that this special education regulation describes NMSD as a "state educational agency established to provide educational services to children who are deaf or hard of hearing, and who may have one or more other disabilities" and "serves students who require specialized

or intensive educational services related to hearing impairment or deafness." *Id.* (citing § 6.31.2.11(K) (NMAC)). Plaintiff explains that prior to reaching its final adoption, NMPED's draft language echoed NMSD's stance which allowed NMSD "to exclude deaf students from attendance on the basis of other disability," but that after public comment this language was excluded.[7] *Id.* at ¶ 94. Plaintiff also alleges that prior to the enactment of § 6.31.2.11(K) (NMAC) in 2020, NMPED was aware of complaints regarding NMSD's exclusion of deaf students who had other disabilities. *Id.* at 19-20, ¶ 95 (citing a 2007 IDEA state complaint and lawsuit brought against NMPED by a parent whose deaf child with other disabling conditions was refused admission to NMSD).[8]

Plaintiff alleges that NMPED has never monitored or enforced the regulation that governs NMSD "despite NMSD's pronouncement on NMSD website and in other written materials that it served students whose 'primary' disability was deafness[.]" *Id.* at 16-17, ¶¶ 83, 86. Plaintiff alleges the NMSD refuses enrollment or placement to deaf students based on its own subjective standard about whether being deaf is a student's "primary" need in violation of the state special education regulation. *Id.* at 18, ¶ 90. Plaintiff alleges that NMPED knew or should have known

---

[7] Plaintiff states that the language originally proposed and removed read "[t]he school [NMSD] is not intended to serve: . . . (b) students whose primary ongoing needs are related to a severe or profound emotional, behavioral, or cognitive disability." Doc. 42 at 19, ¶ 94.

[8] Plaintiff explains as to the 2007 IDEA state complaint that it resulted in a

> ruling against NMPED on an earlier version of §6.31.2.11(J) NMAC because the regulation "gives NMSD the right to accept or reject a deaf student on its own and for its own reasons . . ." The appointed investigator recognized that "[f]ederal and state law give NMPED a supervisory role . . . [and] the challenged rule [§6.31.2.11(J) as it existed in 2006/7] insofar as it applies to deaf children does in some cases remove an important part of the continuum of placements and appears to second-guess or expand the role of NMSD under enabling state law." (6/24/2007 decision letter in C0607-27).

Doc. 42 at 20, ¶ 95. As to the subsequent lawsuit, Plaintiff states that the court granted parent's motion for an evidentiary hearing on the IDEA claims against NMPED, but the case settled in the same month. *Id.*

that NMSD had a practice of rejecting or pushing out certain deaf students from attendance at NMSD based on its unwillingness to meet needs for special education arising for deaf students from other disabilities. *Id.* at 24, ¶ 102.

Plaintiff alleges that for many years NMPED's office of special education had a specific job called "low incidence" which has been intermittently filled and that NMPED staff have lacked professional knowledge of the needs of deaf students, deaf education, the inability of "Local Education Agencies" (LEAs) across the state to meet the communication and other needs of deaf students, and how to enforce IDEA at NMSD. Doc. 42 at 18, ¶ 88. Plaintiff alleges that NMPED has done nothing to monitor or enforce NMSD's IDEA compliance since G.G. began as an NMSD student in February 2023. *Id.* at 25, ¶ 110. Plaintiff alleges that NMPED's failure to enforce IDEA at NMSD, both as to the least restrictive environment mandate and state standards for students who are deaf, was a cause of G.G.'s inappropriate removal by NMSD in October/November 2024 forcing G.G. into SFPS which could not meet his needs as a student who is deaf. *Id.* at 16, ¶ 80. Plaintiff alleges that NMSD wrote G.G.'s IEPs in October 2024 using an improper and artificial construct - not found in the IDEA and in violation of state regulation – that autism, not deafness, was G.G.'s "primary" eligibility for special education. *Id.* at 16, ¶ 81. Plaintiff alleges that NMSD did this so it could remove G.G. from attending NMSD and be placed at SFPS. *Id.* Plaintiff alleges that at the DPH in May 2025, the NMSD superintendent testified that NMSD's compliance with IDEA is only voluntary and not mandated.[9] *Id.* at 17, ¶ 87.

[9] Plaintiff states that the NMSD superintendent testified: "[We]'re an independent state school . . . . And we have a right to decide our admissions criteria. And we have the right to decide how we operate. New Mexico Public Education Department, we're voluntarily complying with a few elements. So we accept IDEA funds. And by accepting those funds, *we voluntarily comply with the rules* – the monitoring by PED." Doc. 42 at 17, ¶ 87 (citing DPH 2425-22 TR vol. 7 (May 28, 2025) at 1682) (emphasis added).

Plaintiff alleges that NMPED was named as a respondent in Plaintiff's Request for Due Process Hearing when it was filed and placed on notice of the facts alleged. *Id.* at 25, ¶ 109. Plaintiff alleges that NMPED has taken no steps to date to determine how the September 4, 2025, DPHO order for G.G. will be carried out or what it means in terms of Plaintiff's and G.G.'s IDEA rights as of the date of the original filing of this Complaint. Id. at 25-26, ¶ 111. Plaintiff alleges that G.G. continues to be deprived of FAPE as the result of NMPED's failure to enforce IDEA at NMSD. *Id* at 26, ¶ 112.

## IV. ARGUMENTS

### A. NMPED's Motion to Dismiss

Defendant NMPED moves to dismiss Plaintiff's Amended Complaint arguing that Plaintiff has made only conclusory allegations regarding NMPED's "failure to enforce IDEA for G.G." and "failure to enforce IDEA's implementation at NMSD" and does not articulate particularized facts to tie these alleged failures to denial of G.G.'s FAPE. Doc. 45 at 3. Defendant NMPED broadly argues that "[t]he centerpiece of the IDEA is the student's . . . (IEP)" and if a student's parents are unhappy with the outcome, they "may file a complaint to challenge the IEP through a due process hearing[,]" which is what Plaintiff did in the present case. *Id.* at 7-8 (citing *Chavez ex rel. M.C. v. New Mexico Pub. Educ. Dep't*, 621 F.3d 1275, 1277 (10th Cir. 2020)). Defendant NMPED argues that after exhausting her administrative remedies, Plaintiff then brought this suit which is the statutory process for challenging G.G.'s IEPs and resolving conflicts with the LEAs. *Id.* at 8. Defendant NMPED argues, therefore, that the process pursuant to the IDEA is working as it should. *Id.*

NMPED further argues that Plaintiff fails to articulate how NMPED's alleged failures in monitoring or enforcing the IDEA at NMSD was a cause of G.G.'s removal from NMSD and/or the denial of his FAPE and that conclusory allegations without supporting factual allegations are insufficient to survive a 12(b)(6) motion. *Id.* (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Addressing Plaintiff's specific allegations, Defendant NMPED argues that Plaintiff fails to tie NMPED's historical involvement in and development of its statutory and regulatory obligations for meeting the needs of deaf students to the denial of G.G.'s FAPE. *Id.* at 9-10. Defendant NMPED argues that Plaintiff fails to identify any section in the IDEA that requires a SEA to maintain either a specific "low incident" job position or professional staff with "knowledge of needs of deaf students or deaf education." *Id.* Defendant NMPED argues that the deletion of proposed regulatory language in 2020 to remove "any authority for NMSD to exclude deaf students on the basis of other disability" is evidence of the rulemaking process working as intended rather than to support Plaintiff's claim that the NMPED supported NMSD's alleged "stance that it can exclude deaf students . . . if it determines deafness is not the student's 'primary' eligibility." *Id.* at 8-9. Defendant NMPED argues that the use of "primary" or "secondary" eligibility labels does not change an LEA's obligations to provide a FAPE. *Id.* at 9-10.

Defendant NMPED argues that Plaintiff's allegations regarding NMSD's "historical arrogance" regarding its compliance with IDEA is mere conjecture and that Plaintiff's Amended Complaint fails to allege particularized facts to demonstrate how NMPED knew or should have known that NMSD had a practice of "rejecting or pushing out certain deaf students from attendance" with other disabilities and was actively defying state regulation and considered its compliance with IDEA optional. *Id.* at 9-10. Defendant NMPED argues that aside from citing a

single example from nearly two decades ago regarding a student who was refused admission to NMSD and the allegations here pertaining to G.G.'s disenrollment from NMSD following two IEP meetings in October 2024 and the subsequent due process proceeding, Plaintiff does not identify any other specific instances of NMSD "rejecting or pushing out" students who also had other disabilities. *Id.* at 10-11. Defendant NMPED argues that Plaintiff's allegation that NMSD "believes it can refuse enrollment or placement to deaf students in New Mexico based on its own subjective (and shifting) standard about whether being deaf is a student's 'primary' need . . . [and] refuses to provide education at its Santa Fe campus to deaf students who have other disabilities impacting their education," is contradicted by the fact that G.G. was a student at NMSD for nearly two years, from February 2023 until November 2024. *Id.* at 8-9.

Defendant NMPED argues that Plaintiff's allegations lack the factual enhancement or explanation necessary to demonstrate or allow a plausible inference that Defendant NMPED's alleged abdication of its duties of general supervision is connected to the denial of G.G.'s FAPE. *Id.* at 11-12. Defendant NMPED argues that other than Plaintiff filing a request for an IDEA due process hearing with the NMPED on March 17, 2025, she fails to allege any other facts to support that the NMPED was aware that G.G. was being denied a FAPE by NMSD. *Id.* Defendant NMPED argues, as noted by District Judge Johnson in his June 23, 2026, Memorandum Opinion and Order, that "notice acquired through litigation does not itself establish liability under the IDEA" and Plaintiff fails to allege that she "sought the Department's intervention or assistance before initiating due process proceedings, initiated a state complaint . . . or otherwise invoked the Department's supervisory authority during the period in which the alleged IDEA violations occurred." *Id.*

In sum, Defendant NMPED argues that Plaintiff relies solely on conclusory allegations regarding NMPED's general supervisory role failures as a basis for holding NMPED liable under the IDEA and fails to tie these alleged failures in enforcement to the denial of a FAPE to G.G. *Id.* Defendant NMPED argues that Plaintiff's conclusory allegations are insufficient to survive a 12(b)(6) motion. *Id.* Accordingly, Defendant NMPED requests that Plaintiff's claims against it pursuant to the IDEA be dismissed for failure to state a claim on which relief can be granted. *Id.*

**B. <u>Plaintiff's Response</u>**

Plaintiff contends that she tracked Judge Johnson's June 23, 2026, Memorandum Opinion and Order for guidance about what was missing in her Complaint to adequately state a claim against the SEA under §1412(a)(11) (general supervisory responsibilities), and added facts in her First Amended Complaint to show the "nexus" or "meaningful relationship" between SEA's acts or omissions and the denial of FAPE to G.G. in combination with other facts alleged in the original Complaint. Doc. 47 at 3. Plaintiff contends that the following factual allegations included in the First Amended Complaint, in combination with facts provided by the original Complaint, establish that Defendant NMPED's failure to enforce IDEA at NMSD was the cause of NMSD's inappropriate removal of G.G. from NMSD and denial of FAPE to G.G.

Those additional facts are that (1) NMPED staff "lacked professional knowledge of needs of deaf students, deaf education, and the inability of LEAs across the state to meet the communication needs of deaf students and how to enforce IDEA at NMSD"; (2) NMPED's failure to enforce IDEA allowed NMSD to rely on an artificial construct, *i.e.,* "primary" eligibility of autism, to push G.G. out of its school; (3) NMPED failed to enforce the state special education regulation prohibiting NMSD from excluding deaf students who had additional disabilities after its enactment in 2020 and through 2024; (4) NMPED should have been familiar

with NMSD's stance as found on its website that it serves students whose "primary" disability is deafness; (5) by determining a student's "primary" disability, NMSD preserves its ability to exclude certain deaf students in contradiction to IDEA and state regulations; (6) NMPED was aware before and after 2020 enactment of its regulation that NMSD excluded deaf students with other disabilities from NMSD attendance and the probable impact of deaf students being barred from NMSD and therefore required to attend an LEA which most often could not meet the unique communication issues of deaf students; (7) NMPED was aware both before and after 2020 enactment of its regulation that LEAs struggled to meet the communication needs of the deaf; (8) NMPED was aware through the rulemaking process for adoption of 6.3.2.11(K) that the originally proposed rule explicitly allowed NMSD to reject deaf students on the basis of additional disabilities; (9) the remedy ordered by the DPHO signifies that G.G. cannot receive a FAPE in New Mexico; and (10) NMSD's forced removal of G.G. from its school and G.G.'s subsequent placement in SFPS was inconsistent with New Mexico's statutory adoption of Deaf Children's Educational Bill of Rights. *Id.* at 3-6.

Plaintiff contends that Defendant NMPED's Motion to Dismiss fails to explicitly address the nexus relationship test requirement to state a claim as explained in Judge Johnson's Memorandum Opinion and Order. *Id.* at 6-8. Plaintiff contends that Defendant NMPED's asserted lack of notice and/or awareness regarding G.G.'s denial of FAPE fails to address the "nexus relationship test" required to state a claim. *Id.* Plaintiff contends that Defendant NMPED improperly attempts to dispute her pleaded facts, which the Court must accept as true. *Id.* Plaintiff contends that the due process hearing decision, which held that both NMSD and SFPS had denied G.G. a FAPE and then ordered a remedy not available in New Mexico, makes NMPED's failure to enforce IDEA in New Mexico apparent. *Id.*

Plaintiff asks that the Court deny Defendant NMPED's Motion to Dismiss and order it to answer her First Amended Complaint as a Defendant. *Id.*

**C. <u>Defendant NMPED's Reply</u>**

Defendant NMPED argues that Plaintiff's repetition of conclusory allegations from her Amended Complaint does not lead to specific facts, which if true, entitle her to relief. Doc. 51 at 3. Defendant NMPED argues that Plaintiff's additional allegations focus on the actions of NMSD, *i.e.,* NMSD inappropriately removed G.G.; NMSD relied on an artificial construct not found in the IDEA; NMSD revoked G.G.'s original acceptance; and NMSD was acting to exclude students with other disabilities, but fails to tie NMPED's alleged failure to enforce the IDEA to the denial of a FAPE to G.G. *Id.* Defendant NMPED argues that Plaintiff has failed to allege particularized facts to demonstrate how NMPED failed to monitor or enforce the state special education regulation or to demonstrate a history of noncompliance by NMSD in which NMPED was aware. *Id.* at 3-4. Defendant NMPED contends that a finding by a DPHO that a LEA has not or cannot provide a child with a FAPE does not, in and of itself, indicate that an SEA has violated the IDEA or its responsibility of general supervision.

In sum, Defendant NMPED argues that Plaintiff's allegations lack the factual enhancement or explanation necessary to demonstrate a plausible inference that NMPED failed to enforce the IDEA's implementation at NMSD, failed to enforce the IDEA for G.G., or that these alleged failures were the cause of the denial of a FAPE for G.G.

## V. <u>ANALYSIS</u>

**A. <u>The IDEA</u>**

The IDEA offers States federal funds to assist in educating children with disabilities. 20 U.S.C. § 1400 *et seq; see Arlington Central School Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291, 295

(2006); *see also Chavez ex rel. M.C. v. N.M. Pub. Educ., Dep't.*, 621 F.3d 1275, 1287 (10th Cir. 2020) ("The IDEA is primarily a funding statute and the SEA controls some of the purse strings."). In exchange for the funds, a State pledges to comply with a number of statutory conditions. Among them, the State must provide a free appropriate public education – a FAPE, for short – to all eligible children. 20 U.S.C. § 1412(a)(1); *see also Ellenberg v. N.M. Mil. Inst.*, 478 F.3d 1262, 1269 (10th Cir. 2007) (explaining that State educational agencies, like NMPED, are primarily responsible "for implementing the IDEA and policing IDEA compliance."). Local educational agencies (LEAs) bear "primary responsibility for overseeing the actual provision of special education services." *Ellenberg*, 478 F.3d at 1269.

As part of providing a FAPE, school districts receiving funds under the IDEA are required to establish an IEP for each child with a disability. *Jacobs v. Salt Lake City School District*, 154 F.4th 790, 801 (10th Cir. 2025) (citing *Alex W. ex rel. Marlene W. and William W. v. Poudre Sch. Dist.* R-1, 94 F.4th 1176, 1180 (10th Cir. 2024) (explaining that at the "core" of the FAPE requirement is the jointly crafted IEP for each disabled student which is a "comprehensive plan" by which "special education and related services are 'tailored to the unique needs' of a particular child.") (citations omitted))). The IEP must contain a written statement that is developed, reviewed, and revised that includes, *inter alia,* a specific statement of the child's current performance levels, the child's short-term and long-term goals, the educational and other services to be provided, and the criteria for evaluating the child's progress. *See* 20 U.S.C. § 1414(d)(1)(A); *see also* 34 C.F.R. § 300.320 (*Definition of individualized education program*). The LEA must reevaluate the student at least once every three years, 20 U.S.C. § 1414(a)(2)(A). When reevaluating a student, an LEA must ensure that the student "is assessed in all areas of suspected disability." 20 U.S.C. § 1414(b)(3)(B).

The IDEA mandates certain procedural safeguards for protecting a child's right to a FAPE. Section 1415 of the IDEA grants the right to present to the school district a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of [a child with a disability], or the provision of a free appropriate public education [FAPE] to such child." 20 U.S.C. § 1415(b)(6)(A). In conjunction with the complaint the parents must provide the district with a notice that includes "a description of the nature of the problem of the child relating to such proposed initiation or change, including facts relating to such problem" and "a proposed resolution of the problem to the extent known and available to the parents at the time." 20 U.S.C. § 1415(b)(7)(A)(ii)(III), (IV). The complaint, if not settled through mediation, *see* § 1415(e), or a preliminary meeting, *see* § 1415(f)(1)(B)(i), is resolved through an impartial due-process hearing, *see* § 1415(f)(1). At the hearing the parties have "the right to present evidence and confront, cross-examiner, and compel the attendance of witnesses" 20 U.S.C. § 1415(h)(2). The hearing officer must prepare findings of fact and a decision. *See* § 1415(h)(4). Either party may appeal the hearing officer's decision to the state educational agency, which reviews the findings and decision and "make[s] an independent decision upon completion of such review." 20 U.S.C. § 1415(g). Only after the state agency has issued its decision may a party bring "a civil action with respect to the complaint" in state or federal court. 20 U.S.C. § 1415(i)(2)(A).

**B. District Judge Johnson's June 23, 2026, Memorandum Opinion and Order**

Relevant to the Court's analysis is a review of District Judge Johnson's June 23, 2026, Memorandum Opinion and Order in which he granted Defendant NMPED's Motion to Dismiss Plaintiff's IDEA claims in her original Complaint without prejudice. Doc. 35. In doing so, Judge Johnson explained that the IDEA places ultimate responsibility for IDEA compliance on the SEA through § 1412(a)(11) and that courts have recognized that a SEA may be, in some

circumstances, held responsible for IDEA violations notwithstanding the primary responsibility of the LEA. *Id.* at 9 (citations omitted). Judge Johnson explained that the authorities addressing the SEA's supervisory or enforcement liability suggest that some nexus is required and that the SEA's alleged acts or omissions must bear a meaningful relationship to the denial of a FAPE. *Id.* at 10-11 (citations omitted).

Judge Johnson then explained that Plaintiff had not plausibly alleged those circumstances in her Complaint. *Id.* at 11-12. For example, Judge Johnson stated that Plaintiff's Complaint failed to allege how Defendant NMPED's alleged failures of supervision, monitoring, expertise, and enforcement with respect to NMSD and SFPS contributed to the denial of a FAPE in this case but instead had illustrated the nexus between the NMSD's development of G.G's IEP and the deprivation of a FAPE. *Id.* Judge Johnson stated that Plaintiff's Complaint failed to allege facts showing how Defendant NMPED's purported knowledge that the NMSD maintained a practice of excluding students with disabilities in addition to deafness caused the specific IDEA violations found by the DPHO. *Id.* Judge Johnson stated that Plaintiff's Complaint failed to allege that Defendant NMPED directed, approved, or otherwise participated in the challenged decisions concerning G.G., which are ultimately attributed to the NMSD. *Id.* Judge Johnson stated that notice acquired through litigation does not itself establish liability under the IDEA; that Plaintiff's Complaint failed to identify any provision of the IDEA requiring Defendant NMPED to adopt Plaintiff's position in the administrative proceedings or forego its contention that it was not a proper party; and that Plaintiff's Complaint contained no allegations demonstrating that Defendant NMPED's supervisory or enforcement authority was invoked once those proceedings had commenced. *Id.* Finally, Judge Johnson explained that Plaintiff's Complaint failed to allege that Plaintiff sought Defendant NMPED's intervention or assistance

before initiating due process proceedings, initiate a state complaint pursuant to N.M. Admin. Code § 6.31.2.13(H),[10] or otherwise invoke Defendant NMPED's supervisory authority during the period in which the alleged IDEA violations occurred. *Id.*

### C. <u>Analysis</u>

Plaintiff's allegations as to NMPED are brought pursuant to a SEA's enforcement duties found in 20 § 1412(a)(11), which states in pertinent part:

> **(11) State educational agency responsible for general supervision**
>
> **(A) In general**
>
> The State educational agency is responsible for ensuring that—
>
> (i) the requirements of this subchapter are met;
>
> (ii) all educational programs for children with disabilities in the State, including all such programs administered by any other State agency or local agency—
>
> (I) are under the general supervision of individuals in the State who are responsible for educational programs for children with disabilities; and
>
> (II) meet the educational standards of the State educational agency[.]

20 U.S.C. § 1412(a)(11); *see also* 34 C.F.R. § 300.149(a) (same). Thus, SEAs such as NMPED have oversight responsibility over LEAs to ensure that the requirements of the IDEA are met.

The IDEA and its implementing regulations offer only general guidance for what states must do to satisfy their monitoring and enforcement obligations. The state's monitoring activities must focus on "improving educational results and functional outcomes for all children with

[10] This regulation provides that "Subsection H of 6.31.2.13 NMAC prescribes procedures to be used in filing and processing complaints alleging the failure of the department or a public agency to comply with state or federal laws or rules governing programs for children with disabilities under IDEA." § 6.31.2.13(H) NMAC.

disabilities," and ensuring that states meet the IDEA's requirements, with a special focus on "priority areas" enumerated in the statute.[11] 20 U.S.C. § 1416(a)(2), (a)(3); *see also* 34 C.F.R. § 300.600(b) (same). The state must have in effect policies and procedures to ensure that it complies with the monitoring and enforcement requirements of the IDEA. 34 C.F.R. § 300.149(b). The IDEA does not require states to adopt any particular approach for monitoring. *See Emma C. v. Thurmond*, 393 F. Supp. 3d 885, 892–93 (N.D. Cal. 2019). By specifying the ends, but leaving the means to the states, the IDEA strikes a balance between federal authority and the states' historic discretion in the design and control of their education systems. *Id.*

In her Amended Complaint, Plaintiff adds factual allegations providing context for the State's statutory directive to NMPED related to the needs of children who are deaf and hard of hearing.[12] Plaintiff's Amended Complaint adds allegations regarding NMPED's 2009 guidance

---

[11] Priority areas are:

> (1) Provision of FAPE in the least restrictive environment.
>
> (2) State exercise of general supervision, including child find, effective monitoring, the use of resolution meetings, mediation, and a system of transition services as defined in § 300.43 and in 20 U.S.C. 1437(a)(9).
>
> (3) Disproportionate representation of racial and ethnic groups in special education and related services, to the extent the representation is the result of inappropriate identification.

20 U.S.C. § 1416(a)(3).

[12] In additional to citing relevant parts of the *Deaf and Hard-of-Hearing Children's Educational Bill of Rights* (NMSA § 28-11C-1, et seq.), Plaintiff cites NMSA § 22-13-5, which reads:

> School districts shall provide special education and related services appropriate to meet the needs of students requiring special education and related services Rules and standards shall be developed and established by the department for the provision of special education in the schools and classes of the public school system in the state and in all institutions wholly or partly supported by the state. The department shall monitor and enforce the rules and standards. School districts shall also provide services for three-year-old and four-year-old preschool children with disabilities, unless the parent or guardian chooses not to enroll the child. Services for students age three through twenty-one may include, but are not limited to, evaluating particular needs, providing learning experiences that develop cognitive and social skills, arranging for or providing related services as defined by the department and providing parent education. The services may be provided by licensed school employees or contracted for with other community agencies and shall be provided in age-

provided to IEP teams for deaf or hard-of-hearing children, NMPED's participation on a 2016 Task Force report that recognized the difficulties of providing education for students who are deaf, and NMPED's adoption of a state regulation in 2020 formally identifying NMSD as a "state educational agency established to provide educational services to persons who are 21 years of age or younger on the first day of school, who are deaf or hard of hearing, and who may have one or more other disabilities." Plaintiff's Amended Complaint also restates that NMPED was aware before and after adoption of the 2020 state regulation that NMSD engaged in rejecting deaf and hard-of-hearing students based on other disabilities in a State where LEAs already struggled to meet the communication needs of deaf students. Though stated in various ways, the crux of Plaintiff's liability argument as to NMPED's violation of its general supervisory responsibilities pursuant to IDEA is that the provisions of state regulation §6.31.2.11(K) prohibits NMSD "from excluding deaf students who had additional disabilities, but NMPED did not enforce this regulation after enactment in 2020 at any time up through 2024 when G.G. was excluded from NMSD" and that NMPED has knowingly allowed NMSD to disobey this requirement by ranking disabilities thereby causing the denial of G.G.'s FAPE in violation of the IDEA. Doc. 42 at 23, ¶ 101; Doc. 47 at 4.

With the foregoing in mind, the question before the Court is whether Plaintiff's Amended Complaint has plausibly alleged additional facts to support circumstances demonstrating a meaningful relationship between the SEA's alleged acts or omissions to the denial of G.G.'s FAPE.

---

> appropriate, integrated settings, including home, daycare centers, head start programs, schools or community-based settings.

N.M. Stat. § 22-13-5; *see also Ellenberg*, 478 F.3d at 1270 (citing N.M. Stat. § 22-13-5) (explaining that "[a]lthough NMPED is required to promulgate rules and standards governing the provision of special education services, local school districts are responsible for directly providing special education and related services to disabled students.").

The Court finds that Plaintiff's additional alleged facts are insufficient to support that NMPED violated its duties to monitor or enforce the IDEA requirements pursuant to its general supervision obligations. To begin, the Court finds that Plaintiff's narrow reading of the state special education regulation upon which she anchors her allegations is not supported by its plain language. Section 6.31.2.11(K) (NMAC) reads in its entirety as follows:

> **K.** Children at the New Mexico School for the Deaf (NMSD).
>
> **(1)** NMSD is a state educational agency established to provide educational services to persons who are 21 years of age or younger on the first day of school, who are deaf or hard of hearing, and who may have one or more other disabilities. The school serves as a special school on the continuum of placement options. The school serves students who require specialized or intensive educational services or services related to hearing impairment or deafness. NMSD provides a variety of services to the students and school districts around the state, including outreach, consultation, and training services. NMSD also provides comprehensive services on a day or residential basis. The comprehensive day and residential programs are not intended to serve students whose needs are appropriately addressed in a group home or hospital setting or in a residential treatment facility.
>
> **(2)** To be eligible to receive free services from NMSD, a student shall be deaf or hearing impaired as determined by an audiological evaluation and be a resident of New Mexico.
>
> **(3)** The student's resident school district shall conduct child find, pursuant to 34 CFR Sec. 300.111 and Subsection A of 6.31.2.10 NMAC.
>
> **(4)** In addition to the requirements of identification, evaluations, and eligibility determinations of students with disabilities pursuant to 6.31.2.10 NMAC and 34 CFR Secs. 300.100 through 300.230 and 300.300 through 300.328, if a student's resident school district finds, has reason to know, or receives documentation that a student is deaf, has a hearing impairment, or is deafblind, the following criteria shall apply
>
> **(a)** the resident school district shall convene the initial IEP team meeting;
>
> **(b)** the IEP team shall include members specified in Paragraph (11) of Subsection B of 6.31.2.7 NMAC, including staff from the NMSD if invited by the parent or the resident school district pursuant 34 CFR Sec. 300.321(a)(6);

> **(c)** the resident school district shall provide the parents of the student with information on the continuum of alternative placements, including the alternative placements listed in the definition of special education under 34 CFR Sec. 300.39 (instruction in regular classrooms, special classes, special schools, home instruction, and instruction in hospitals and institutions); and supplementary services, such as resource room or itinerant instruction, to be provided in conjunction with regular class placement;
>
> **(d)** in addition to the requirements of Subsection B of 6.31.2.11 NMAC, the IEP team shall be tasked with:
>
> > **(i)** determining if the student has a hearing disability, which impacts the student's ability to access education, ability to develop language or communication, social emotional development, and/or overall development; and
> >
> > **(ii)** determining the student's placement in the least restrictive environment, in compliance with 34 CFR Secs. 300.114 through 300.120 and Subsection C of 6.31.2.11 NMAC, which for the student may be an environment specifically designed for deaf and hard of hearing children, and whether this is the most appropriate setting in providing educational services and supports to meet the student's IEP.
>
> **(e)** the student's placement, whether in the resident school district, NMSD, or other educational entity, is the entity that shall have full responsibility for FAPE and all services defined in the student's IEP unless the resident school district and NMSD agree to share services, responsibilities, and costs pursuant to 34 CFR Sec. 300.103; and
>
> **(f)** the composition of the IEP team after a student's placement and service determinations shall:
>
> > **(i)** include a representative from the resident school district at the request of the parent, NMSD, or the resident school district if the final placement for the student is at NMSD; and
> >
> > **(ii)** include a representative from NMSD at the request of the parent, the resident school district, or NMSD if the final placement for the student is at the resident school district or other educational entity.

6.31.2.11(K) (NMAC).

Section 6.31.2.11(K) indeed establishes NMSD as a state educational agency to provide educational services to students who are deaf or hard of hearing, *and who may have one or more other disabilities*. But Plaintiff's representation of the regulation overlooks, *inter alia*, the role of the IEP team to determine placement in the first instance, to continue placement thereafter, and the regulation's description of NMSD as a school that "serves as a special school *on the continuum of placement options*." Thus, a plain reading of the regulation does not support Plaintiff's position that NMSD is *required* to provide education to all students who are deaf or hard of hearing and have other disabilities and/or *prohibited* from excluding those students under any circumstance.

The Court also finds that Plaintiff's additional alleged facts related to NMPED's longstanding awareness of the difficulty of providing appropriate education for students in New Mexico who are deaf or hard of hearing fail to demonstrate a nexus between NMPED's acts or omissions to the denial of G.G.'s FAPE. For instance, Plaintiff's factual allegations regarding NMPED's 2009 guidance to IEP teams, its participation on the 2016 Task Force, and its adoption of the 2020 special education regulation do not demonstrate that NMPED promulgated improper regulations, failed to provide policies or procedures to ensure LEA compliance, or ignored and/or refused to investigate complaints that resulted in the denial of G.G.'s FAPE. *See, e.g., M.C. v. Los Angeles Unified School Dist.*, 559 F. Supp. 3d 1112, 1121 (C.D. Cal. 2021) (finding the complaint plausibly alleged a violation of SEA's supervisory obligations under the IDEA where the complaint alleged that the agency's promulgation of a regulation allowed the school district to maintain policies that denied the plaintiff a FAPE in the least restrictive environment); *J.N. v. Oregon Department of Education*, 2020 WL 5209846 (D. Ore. Sept. 1. 2020) (denying motion to dismiss for lack of standing where putative class sufficiently alleged, *inter alia*, that harm related

to shortened school days was fairly traceable to the State's failure to fulfill its statutory duty to ensure that districts provide a FAPE where the State failed to provide policies and procedures requiring districts to collect and report data, to monitor school districts' compliance, and failure to provide the districts "adequate resources, technical assistance, and training to prevent the unnecessary use of shortened school days"); *Jackson v. Pine Bluff School District*, 2017 WL 2296896, *4-7 (E.D. Ark. May 12, 2017) (denying Arkansas Department of Education's motion to dismiss where plaintiff's complaint sufficiently alleged facts that ADE failed to investigate complaints regarding systemic and discriminatory practices by Pine Bluff School District that included failing to provide a least restrictive setting, refusing to enroll students with disabilities, segregating and transferring students with disabilities to one private school, and failed to investigate complaints); *Morgan Hill Concerned Parents Assoc. v. California Dept. of Educ.*, 2013 WL 1326301, at * 10-11 (E.D. Cal. March 29, 2013) (finding plaintiff's complaint sufficiently pled factual allegations against the SEA that it failed to have a system in place to ensure the integrity and accuracy of collected data regarding compliance, failed to solicit data effectively from parents, and failed to investigate parent complaints).

Further, even accepting as true that NMPED, being fully aware of its statutory and regulatory obligations in the context of providing appropriate education for students in New Mexico who are deaf or hard of hearing, knew or should have known that NMSD was ranking student disabilities as part of the IEP process, the Court finds that Plaintiff's Amended Complaint nonetheless fails to allege facts to show how NMPED's awareness of this practice violated the IDEA based on its general supervisory obligations pursuant to § 1412 and/or ultimately contributed to the denial of G.G.'s FAPE. To begin, G.G.'s placement at NMSD in the first instance and displacement in 2024 was determined by IEPs. *See* 20 U.S.C. § 1414(d)(1)(A)

(describing IEP as a written statement that is developed, reviewed, and revised that includes, *inter alia,* a specific statement of the child's current performance levels, the child's short-term and long-term goals, the educational and other services to be provided, and the criteria for evaluating the child's progress); *see also* 34 C.F.R. § 300.304(c)(6) (explaining that the educational agency must conduct an evaluation that is "sufficiently comprehensive to identify all of the child's special education and related services needs, whether or not commonly linked to the disability category in which the child has been classified."); §6.31.2.11(K)(4) (NMAC) (describing IEP team tasks at NMSD). Plaintiff's Amended Complaint, however, does not assert any facts to support that NMPED directed, advised, approved, or otherwise participated in the development of the IEPs that resulted in either G.G.'s placement at NMSD or his subsequent transfer to SFPS.[13] Moreover, Plaintiff's allegations regarding NMPED's awareness of NMSD's ranking of disabilities in its IEP process as evidence of NMPED's failure to enforce the provisions of the IDEA and §6.31.2.11(K) fails to account for the IDEA's requirement that an LEA shall ensure that a child is assessed *in all areas of suspected disability*. *See* 20 U.S.C. § 1414(b)(3)(B) (explaining that an LEA shall ensure that, *inter alia*, a child is assessed in all areas of suspected disability); *see also generally* Nicole Tuchinda, *The Imperative for Trauma-Responsive Special Education*, 95 N.Y.U. L. Rev. 766, 814 (2020) (observing that because many states' forms for IEPs ask for a "primary disability" category, IEP teams tend to categorize children according to the disability category that seems to describe the child's most severe impairment). In other words, even if the use of "primary" and "secondary" is not found within

[13] Further, while Plaintiff alleges that NMPED was aware from 2020 through 2024 of NMSD's ranking practice, Plaintiff's Amended Complaint does not allege G.G. was denied a FAPE during the time he went through his trial period at NMSD which was completed in April 2023 after which time he became a "permanent student." Doc. 42 at 9, ¶ 42. Indeed, it was only after NMSD's staffing changes and subsequent reevaluation in October 2024 of G.G.'s disabilities and development of new IEPs that Plaintiff alleges NMPED's failure to enforce occurred. Additionally, the only incident of NMSD excluding a student during the period of time Plaintiff alleges that NMPED failed to enforce §6.31.2.11(K) is G.G.'s disenrollment in 2024.

the IDEA as a means of assessing a child's educational needs in the face of multiple disabilities, Plaintiff's Amended Complaint fails to allege facts to support that NMPED's awareness of this practice in an IEP team's development of an IEP amounts to a violation of its general supervisory obligations.

In sum, the Court finds that Plaintiff's Amended Complaint fails to allege facts sufficient to demonstrate a nexus between NMPED's general oversight failures and the denial of G.G.'s FAPE.

## VI. RECOMMENDATION

For the foregoing reasons, the undersigned hereby **RECOMMENDS** that the Court **GRANT** *Defendant New Mexico Public Education Department's Motion to Dismiss Plaintiff's First Amended Complaint* (Doc. 45).

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**